535 A.2d 115

**COMMONWEALTH of Pennsylvania**

v.

**Eugene Altman LOSCH, Appellant.**

Superior Court of Pennsylvania.

Argued April 2, 1987.

Filed Dec. 14, 1987.

Daniel W. Stern, New Bloomfield, for appellant.

Gloria J. McPherson, District Attorney, Duncannon, for Com., appellee.

Before WIEAND, BECK and CERCONE, JJ.

BECK, Judge:

This is an appeal by Eugene Altman Losch from a judgment of sentence entered on June 20, 1986 by the Court of Common Pleas of Perry County. The primary question presented is whether the court which resentenced appellant after his original judgment of sentence was vacated erred by refusing to consider appellant's good conduct while in prison. We find that under the circumstances of this case, the court's failure to consider evidence of good conduct was contrary to the mandate of the Sentencing Code. Accordingly, we must again vacate judgment of sentence and remand for resentencing.

## I.

The procedural background of this case must be set forth in detail. Between 1979 and 1981, appellant participated in a series of crimes in order to support his drug habit. The

judgment of sentence presently on appeal was imposed as the penalty for two of these criminal acts:

On November 1, 1979, appellant Eugene Altman Losch and Paul Aaron Wolf stole close to one thousand dollars worth of food and equipment from the Perry Valley Grange Hall in Millerstown, Pennsylvania.

On April 16, 1980, appellant and Kler Jones, Jr. stole money, a rifle, and a car from Scott and Karen Wright after gaining entry to the Wrights' residence in Newport, Pennsylvania.

The following year, appellant was implicated in several unrelated crimes including the murder of one Hank Swartz, and the solicitation of the murder of a police officer. He pleaded guilty to solicitation to commit homicide before the Honorable Keith B. Quigley and was sentenced to five years imprisonment. He began serving this sentence at the Perry County Prison where he soon gained a reputation as a model prisoner. He also testified as a Commonwealth witness—pursuant to a grant of immunity—at the trials of other individuals who were involved in the Swartz murder.

In 1984, appellant and Wolf were charged in connection with the 1979 Millerstown incident, (No. 5 of 1984), and appellant and Jones were charged in connection with the 1980 Newport incident (No. 6 of 1984).[1] Wolf and Jones pleaded guilty to various offenses and were sentenced by the Honorable Keith B. Quigley to relatively short prison terms.[2] Appellant pleaded guilty to committing one count of burglary in 1979 and to committing one count of robbery and one count of burglary in 1980. He was scheduled for sentencing before Judge Quigley on November 15, 1984.

At his November, 1984 hearing, appellant introduced testimony from eight witnesses who described his good behavior at the Perry County Prison and his cooperation with law

1. Appellant's son, Eugene Donald Losch, was also implicated in the Millerstown break-in. The younger Mr. Losch had no prior criminal record and was admitted into the ARD (accelerated rehabilitative disposition) program.

2. The record does not specify the length of Wolf and Jones' sentences.

enforcement authorities. Judge Quigley took note of this evidence, but he also considered the serious nature of appellant's past crimes. At the conclusion of the hearing, Judge Quigley sentenced appellant to three concurrent terms of ten to twenty years imprisonment.[3] The Judge ignored a defense request that he explain why appellant's codefendants had received less stringent sentences.

Appellant was transferred from the Perry County Prison to the State Correctional Institutional at Camp Hill, Pennsylvania. Meanwhile, his counsel filed a motion to modify sentence which was denied, and appealed the November 15, 1984 judgment of sentence to Superior Court. Counsel alleged that the lower court erred by failing to state on the record the reason for the substantial disparity between the sentence received by Losch and the sentences received by his codefendants. We agreed. See Commonwealth v. Riggins, 474 Pa. 115, 377 A.2d 140 (1977), Commonwealth v. Sinwell, 311 Pa.Super. 419, 457 A.2d 957 (1983). On March 24, 1986, a panel of this court filed an unpublished memorandum decision, 356 Pa.Super. 588, 512 A.2d 52 which vacated the judgment of sentence and remanded for resentencing.

Appellant's second sentencing hearing was held before Judge Quigley on June 20, 1986. At this proceeding, counsel introduced new evidence concerning Mr. Losch's conduct while incarcerated at the State Correctional Institution at Camp Hill, during the eighteen months since the first judgment of sentence had been imposed. Counsel directed the court's attention to a letter from a sergeant at the institution who indicated that Mr. Losch had adjusted well to prison life, and did not pose any disciplinary problems. Counsel then called five witnesses who testified that Mr. Losch had played an active role in the prison chapters of

3. The court did not consider the 1982 sentencing guidelines when imposing sentence. These guidelines did not apply to sentences imposed for offenses committed before July 22, 1982. 204 Pa.Code § 303.1(d). This case is therefore not affected by the Pennsylvania Supreme Court's invalidation of the sentencing guidelines in Commonwealth v. Sessoms, 516 Pa. 365, 532 A.2d 775 (1987).

Alcoholics Anonymous and Narcotics Anonymous, and had provided religious counseling to fellow inmates as a member of the Yoke Fellowship, a Christian ministry.[4] The last witness to testify was Henry G. Baines, pastor of the Messiah Missionary Baptist Church in York, Pennsylvania. Mr. Baines stated:

> [O]ver the past thirteen years I have ministered extensively in all of the prisons and correctional institutes [sic] in the State of Pennsylvania ... and I have never seen a change in a person's life of all the inmates I've ministered to like I've seen in Gene Losch.

N.T. at 16.

At the conclusion of all the testimony, counsel urged the court to take this new evidence into account when resentencing Mr. Losch.[5] The attorney for the Commonwealth did not oppose this request. The trial judge, however, reluctantly concluded that he could not consider evidence of appellant's good conduct. He remarked:

> Now we have a fundamental issue I think here and that is: what is the Court's power, and/or what is the Court's obligation at this time? Clearly, its obligation is to explain the disparity between the sentences imposed on Mr. Losch as well as on the co-defendants; and [Counsel] suggests the Court has the power to modify the sentence and suggests compelling reasons why that sentence should be modified. I compliment Mr. Losch and those gentlemen who work hard in this very difficult area with some success, and it must shine as a bright light when there is success; and I am sure there is not as much

4. This testimony was not a mere repetition of the evidence previously presented to the sentencing court. Indeed, only one of these five witnesses, a Mr. James LeValley, had testified at appellant's first sentencing hearing.

5. "I think that the Court can consider, on the issue of Mr. Losch's sincerity, what his conduct has been since he was sentenced by this Court in a way I think it's fair to say was a disappointment to Mr. Losch. That disappointment did not dissuade him. It did not make him bitter. It made him act in the way that has been described this morning, and I would ask that the Court consider that in imposing sentence." N.T. at 18.

success as you would like. We compliment you fellows for your sincerity and your efforts.

My opinion as a Judge is that if this Court committed error in treating Mr. Losch differently than his co-defendants then he is entitled to a modification of sentence. It pains me somewhat to say this but it's my opinion that his conduct while a prisoner is irrelevant to this proceeding here today. It's not irrelevant in any sense other than that. And I mean that sincerely.

N.T. at 19–20.

The court then proceeded with what it viewed as the sole business at hand—explaining why appellant had been punished more severely than his codefendants. The court noted that codefendants Wolf and Jones had entered into a plea bargain with the Commonwealth; they pleaded guilty in return for a promise that the District Attorney would recommend a relatively lenient sentence. The court had accepted this recommendation. On the other hand, Mr. Losch had pleaded guilty without first securing a promise of cooperation from the District Attorney's Office. After stating these facts for the record, the court again imposed a sentence of three concurrent terms of ten to twenty years imprisonment.

Counsel filed a motion to modify sentence which was denied, and appealed the new judgment of sentence to this court. In this appeal, he argues that the trial court erred: 1) by disregarding relevant evidence of appellant's good conduct; and 2) by again failing to provide an adequate statement of reasons for the discrepancy between appellant's sentence and his codefendants' sentences.[6]

---

6. Counsel also asserts that the trial judge's comments at the *1984 sentencing hearing* showed that at that time he improperly considered as an aggravating factor in sentencing the fact that appellant had been granted immunity in connection with the murder of Hank Swartz. Counsel raised this issue for the first time in his motion to modify the *1986 judgment of sentence.* Counsel failed to raise this issue at either the 1984 sentencing hearing, or in his motion to modify the 1984 sentence. Moreover, neither counsel nor the trial judge referred to this allegedly improper consideration at the 1986 sentencing hearing.

## II.

■ Before addressing the merits of appellant's claims, we must decide whether the issues which he raises are properly before us. The right to appeal from a discretionary aspect of sentence is not absolute. In *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), the Pennsylvania Supreme Court held that such an appeal should comply with the requirements of both Pa.R.App.P. 2119(f) and section 9781(b) of the Sentencing Code.

Rule 2119(f) provides that the appellant "shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence." In the case sub judice, appellant's brief does not contain this statement of reasons and is therefore defective. The appellee, however, has never objected to this defect.

■ Several panels of the Superior Court which have considered the same fact pattern have reached inconsistent results. Some panels have held that any breach of Rule 2119(f) precludes review of a discretionary sentencing issue. *See, e.g., Commonwealth v. Rivera*, 365 Pa.Super. 361, 529 A.2d 1099 (1987); *Commonwealth v. Hawthorne*, 364 Pa. Super. 125, 527 A.2d 559 (1987). Other panels have held that a Rule 2119(f) violation will be overlooked unless appellee specifically directs the court's attention to this deficiency. *See, e.g., Commonwealth v. Chase*, 365 Pa.Super. 572, 530 A.2d 458 (1987); *Commonwealth v. Rumbaugh*, 365 Pa.Super. 388, 529 A.2d 1112 (1987). *See also Commonwealth v. Hartz*, 367 Pa.Super. 267, 272 n. 2, 532

An objection to a discretionary aspect of a sentence is clearly waived if it was neither raised at the sentencing hearing nor raised in a motion to modify the sentence imposed at that hearing. *See Commonwealth v. Krum*, 367 Pa.Super. 511, 513–515, 533 A.2d 134, 135–36 (1987) (en banc); *Commonwealth v. Cottman*, 327 Pa.Super. 453, 461, 476 A.2d 40, 44 (1984); *Commonwealth v. Albert*, 335 Pa. Super. 424, 484 A.2d 775 (1984). Since appellant's third issue concerns evidence which was considered only at the 1984 sentencing hearing, and since appellant did not raise the issue at that hearing or in his motion to modify his 1984 judgment of sentence, we find that the issue was not properly preserved for review on this appeal.

A.2d 1139, 1141 n. 2 (1987) (en banc). This conflict was recently resolved by the court en banc in *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987); the majority in *Krum* adopted the view that unless the appellee objects, appellant's failure to supply a statement of reasons is not fatal to his appeal. *Id.*, 367 Pa.Superior Ct. at 519–520, 533 A.2d at 138. Accordingly, since the Commonwealth's brief is silent as to the Rule 2119(f) defect, we will not dismiss Losch's appeal on this basis.

■ Since appellant's brief is not fatally defective, we must decide whether the issues presented are amenable to appellate review. Section 9781(b) of the Sentencing Code provides in part that:

> Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter.

42 Pa.Cons.Stat.Ann. § 9781(b) (Purdon 1982). The words "this chapter" refer to the Sentencing Code as a whole. *Tuladziecki*, 513 Pa. at 513, 522 A.2d at 20. We conclude that each of appellant's properly preserved allegations of error presents a substantial question as to whether the trial judge compromised the scheme of sentencing established by the Sentencing Code. We therefore allow the appeal.[7]

---

7. What constitutes a "substantial question" under section 9781(b) must be evaluated on a case by case basis. However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the trial judge's actions were: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms which underlie the sentencing process. *See, e.g., Commonwealth v. Knighton*, 490 Pa. 16, 415 A.2d 9 (1980) (sentence must be adjudicated by fair and impartial judge); *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977) (sentence may not be based in part on impermissible consideration).

In this case, an overview of appellant's brief demonstrates that the court's actions were arguably inconsistent with section 9721(b) of the Code. This section provides:

> In selecting from the [sentencing] alternatives set forth in subsection (a) *the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the*

### III.

Appellant contends that the trial court wrongfully disregarded the evidence of good conduct introduced at the second sentencing hearing. We agree. We begin our analysis of this claim by reviewing some basic principles of the law of sentencing.

The Pennsylvania judiciary is firmly committed to the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079–80, 23. L.Ed.2d 656 (1969). In *Commonwealth v. Martin*, 466 Pa. 118, 133, 351 A.2d 650, 658 (1976), the Pennsylvania Supreme Court held that a judgment of sentence must be vacated unless the trial judge considers both the particular circumstances of the offense and the character of the defendant. This concern with the defendant as a unique individual is also reflected in the text of the Sentencing Code.

Section 9725 of the Code provides:

The court shall impose a sentence of total confinement if, *having regard to* the nature and circumstances of the crime and *the history, character, and condition of the defendant*, it is of the opinion that the total confinement of the defendant is necessary because:

> *rehabilitative needs of the defendant.* The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, *the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reasons for the sentence imposed.* In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42 Pa.Cons.Stat.Ann. § 9721(b) (Purdon 1982) (emphasis added). We therefore grant review. *See Commonwealth v. Tilghman*, 366 Pa.Super. 328, 332 n. 2, 531 A.2d 441, 443 n. 2 (1987) (dictum) (failure to comply with § 9721(b) presents substantial question).

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will deprecate the seriousness of the crime of the defendant.

42 Pa.Cons.Stat.Ann. § 9725 (Purdon 1982) (emphasis added).

Section 9722 provides:

The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of an order of probation:

. . . .

(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime.

■ Section 9721(b) provides that when selecting from among alternative penalties:

[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

Thus, the character of the defendant in general and his need for rehabilitation in particular are matters at the very heart of the sentencing process.

■ A key function of the sentencing hearing is to allow an opportunity for the defense and the prosecution to supply a wide range of information concerning the person who is to be punished. It is the role of trial judge to weigh all mitigating and aggravating factors and arrive at an appropriate sentence. *See Commonwealth v. Tuladziecki,* 513 Pa. at 514, 522 A.2d at 20. The final decision as to what sentence should be imposed is entrusted to the broad discretion of the sentencing authority. *However, the court*

must reach its decision by following certain mandatory procedures. These procedures include the consideration of sufficient and accurate information. *Commonwealth v. Knighton*, 490 Pa. 16, 21–22, 415 A.2d 9, 12 (1980); *Commonwealth v. Martin*, 466 Pa. at 131, 351 A.2d at 657; *Commonwealth v. Ruffo*, 360 Pa.Super. 180, 185, 520 A.2d 43, 46 (1987); *Commonwealth v. Stafford*, 313 Pa.Super. 231, 234–35, 459 A.2d 824, 826 (1983).

In *Commonwealth v. Knight*, 479 Pa. 209, 387 A.2d 1297 (1978), the Pennsylvania Supreme Court described the trial judge's responsibilities in the following terms:

> Imposition of a proper sentence under the Sentencing Code is a matter vested in the sound discretion of the trial court whose determination must be respected unless it is a manifest abuse of discretion. The constraints placed upon the trial court in the exercise of its discretion are that it must not overlook pertinent facts, disregard the force of the evidence, commit an error of law, or inflict punishment exceeding that prescribed by statute. The trial court must thoroughly examine the facts and circumstances of the crime and the background and character of the defendant, and should consult a pre-sentencing report if one has been prepared, especially where, as here, incarceration for one year or more is a possible disposition. Likewise, the court should consider any information in the record bearing on degree of punishment.

*Id.* 479 Pa. at 212–13, 387 A.2d at 1299 (citations omitted). *See also Commonwealth v. Edrington*, 490 Pa. 251, 255–56, 416 A.2d 455, 457 (1980); *Commonwealth v. Franklin*, 301 Pa.Super. 17, 29–30, 446 A.2d 1313, 1319 (1982).

 We conclude that as a general rule, a trial judge may not refuse to consider relevant evidence that defense counsel brings to his attention during the sentencing hearing. We must now apply this rule to the case sub judice. This case is unusual in two respects. First, this is an appeal from a judgment of sentence imposed by a court which had previously sentenced appellant for the same crimes. Second, the evidence which defense counsel intro-

duced concerned appellant's behavior while in prison following his conviction. We find that these special circumstances do not excuse the trial court's intentional failure to consider the evidence.

As we have already noted, appellant was originally sentenced in 1984, the Superior Court vacated and remanded, and appellant was resentenced in 1986. The 1986 sentencing court interpreted the Superior Court's order as a remand for the limited purpose of providing an explanation as to why appellant had received a longer jail term than his codefendants. It is true that the *reason why* this court had reversed the trial court was that the trial court had not stated sufficient reasons for its sentence on the record. This court, however, did not remand for a new statement of reasons; *we vacated the judgment of sentence and remanded for resentencing.*[8] "When a sentence is vacated

8. By vacating the 1984 judgment of sentence, the Superior Court acted in accordance with established precedent. The 1984 sentencing court failed to explain the disparity between appellant's sentence and the sentences of his codefendants. *Commonwealth v. Thurmond,* 257 Pa.Super. 464, 390 A.2d 1330 (1978) held that a judge must state for the record his reasons for treating two codefendants unequally. *See also Commonwealth v. Barrett,* 293 Pa.Super. 100, 437 A.2d 1010 (1981); *Commonwealth v. Sinwell,* 311 Pa.Super. 419, 457 A.2d 957 (1983). The *Thurmond* rule is a special application of the general principle of *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977); *Riggins* held that the judge must articulate his reasons for the judgment of sentence at the time of the original sentencing hearing. *See also Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977). The remedy for a *Riggins* violation is to vacate sentence and remand for a new sentencing hearing. A *Riggins* violation may never be cured simply by remanding for a new statement of reasons. *See Commonwealth v. Bolyard,* 256 Pa.Super. 57, 62 n. 9, 389 A.2d 598, 601 n. 9 (1978); *Commonwealth v. Mullen,* 321 Pa.Super. 19, 467 A.2d 871 (1983) (en banc).

The *Riggins* doctrine has been incorporated into the text of the Sentencing Code. Section 9721(b) of the Code states in relevant part:

In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.... Failure to comply shall be grounds for *vacating the sentence and resentencing the defendant.*

42 Pa. Cons. Stat.Ann. 9721(b) (Purdon 1982) (emphasis added). *See also* Pa.R.Crim.P. 1405(b), cited *infra* at n. 9.

and the case remanded for resentencing, the sentencing judge should start afresh. Here, on remand the sentencing judge merely attempted to justify his original sentence." *Commonwealth v. Kostka,* 276 Pa.Super. 494, 511, 419 A.2d 566, 575 (1980) (Spaeth, J., concurring).

Reimposing a judgment of sentence should not be a mechanical exercise. What is at stake in a sentencing decision is nothing less than the liberty of the individual and the safety of the public. If the trial judge ignores the defendant's conduct during the months preceding the final sentencing hearing, he may reach an inaccurate determination as to whether the defendant is a danger to society or is capable of being a productive and law-abiding citizen. *Cf. Commonwealth v. Sinwell,* 223 Pa.Super. 544, 302 A.2d 400 (1973) (court which resentenced defendant properly considered crime which defendant committed after his original conviction was overturned on appeal); *Commonwealth v. Johnson,* 333 Pa.Super. 42, 46, 481 A.2d 1212, 1214 (1984) (dictum) (court "would have been remiss" if it had failed to consider crime which defendant committed during interval between conviction and sentencing). Given the important nature of the interests involved, the judge at a second sentencing hearing should reassess the penalty to be imposed on the defendant—especially where defense counsel comes forward with relevant evidence which was not previously available.

The remaining question is whether the new evidence at issue in this case is relevant. The Commonwealth contends that a convicted felon's good behavior while in prison has no bearing on what sentence should be imposed for his crimes. We disagree. Even long after the offense has been committed, a defendant's conduct and attitudes may reflect his potential for rehabilitation. Factors which weigh in favor of imposing a reduced criminal penalty include: the defendant's contrition and remorse for his misdeeds *Commonwealth v. Lowe,* 361 Pa.Super. 343, 349, 522 A.2d 614, 617 (1987); his cooperation with law enforcement agencies *Commonwealth v. Frazier,* 347 Pa.Super. 64, 69, 500 A.2d

158, 160 (1985); and his efforts to cure himself of drug addiction. *See Commonwealth v. Butch,* 487 Pa. 30, 407 A.2d 1302 (1979). We do not think that these factors cease to be relevant as soon as the defendant is incarcerated.

Few Pennsylvania cases discuss the impact of evidence of good prison conduct on the sentencing process. However, this subject is explored in the United States Supreme Court's recent decision in *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). In *Skipper,* the defendant was convicted of rape and capital murder. At the sentencing phase of his trial, he sought to introduce the testimony of two jailers and one regular visitor to the jail; these witnesses would have testified that defendant had made a good adjustment to prison life during the seven-and-one-half months between his arrest and trial. The trial court ruled that this evidence was irrelevant and inadmissible, and defendant was sentenced to death. On direct appeal, the Supreme Court held that defendant had proffered "relevant evidence in mitigation of punishment" 90 L.Ed.2d at 6, and that the trial court's failure to admit this evidence at the capital sentencing hearing violated the due process clause of the fourteenth amendment.

We recognize that the case sub judice does not involve either a capital offense or a constitutional challenge. This case, however, is governed by the provisions of the Pennsylvania Sentencing Code. The Code demands something more than the minimum level of due process required by the federal constitution; the Code directs the trial judge to consider the defendant's character in every case in which a defendant is sentenced to a term of imprisonment. *See* §§ 9725, 9722(9), 9721(b), cited *supra.* Today we interpret the Sentencing Code in light of the United States Supreme Court's key finding in *Skipper:* that "a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination." 476 U.S. at 7, 106 S.Ct. at 1672, 90 L.Ed.2d at 8 (footnote omitted). Accordingly, we find that the trial court's affirmative refus-

al to consider evidence relating to this aspect of character at the 1986 sentencing hearing constitutes reversible error.

We hold that when judgment of sentence is vacated and the case is remanded for resentencing, the judge at the resentencing hearing may not refuse to consider any relevant defense evidence concerning appellant's conduct since the prior sentencing hearing. We therefore vacate the judgment of sentence imposed upon appellant on June 20, 1986 by the Court of Common Pleas, and remand for resentencing.

On remand, appellant must be permitted to introduce relevant evidence relating to his good conduct both before and after the 1986 sentencing hearing. The trial judge must take note of this new evidence. Moreover, he must reevaluate whether the jail term which appellant received is a just and appropriate punishment.[9]

We emphasize, however, that our decision is limited in scope. We hold that the trial judge must *consider* evidence of appellant's good conduct in prison. Yet, the trial judge is also free to consider a broad range of other information. He may review all of the testimony and exhibits introduced at both of appellant's prior sentencing hearings. He may also allow the prosecution to introduce evidence relating to appellant's *bad* conduct, if any, since the time that judg-

---

9. We also note that on remand, the trial judge should comply with the terms of Pa.R.Crim.P. 1405 (relating to sentencing). Subsection b of the rule provides that "[At the time of sentencing, the judge shall:] state on the record the reason for the sentence imposed." *See also* 42 Pa.Cons.Stat.Ann. § 9721(b), cited at n. 8 *supra.* This requirement applies both to the original sentencing hearing and to all subsequent resentencing hearings. *See Commonwealth v. Kostka,* 276 Pa.Super. 494, 511, 419 A.2d 566, 575 (1980) (Spaeth, concurring), *Commonwealth v. Phillips,* 258 Pa.Super. 109, 114, 392 A.2d 708, 710 (1978); *Cf. Commonwealth v. DeLuca,* 275 Pa.Super. 176, 418 A.2d 669 (1980) (statement of reasons necessary following revocation of probation). Of course, the trial judge need not record his reaction to every scintilla of evidence introduced by the defense. In the instant case, however, the trial judge should at least: 1) state for the record that he has considered appellant's new evidence; and 2) state for the record whether he incorporates by reference the sentencing considerations expressed in the presence of the defendant at the prior sentencing hearings.

ment of sentence was last imposed.[10] Appellant's favorable adjustment to life in the penitentiary is only one of several variables upon which the trial judge should focus; there is no right to have this one factor take precedence over all others. *See Commonwealth v. Sessoms*, 516 Pa. 365, 376–377, 532 A.2d 775, 781 (1987). In the end, the trial court may conclude that appellant's new evidence pales in significance when compared with the other aspects of his case including the gravity of his offenses.

In summary, we vacate and remand appellant's judgment of sentence on the basis of his first allegation of error. Appellant is entitled to a full and fair reassessment of his case. If he receives fair consideration, the trial court may

**10.** A trial court may even impose a harsher sentence on remand after considering new prosecution evidence. *Commonwealth v. Sinwell,* 223 Pa.Super. 544, 302 A.2d 400 (1973). We caution, however, that the trial court must comply with the United States Supreme Court's decision in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Pearce* held:

Due process of law … requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation of the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

395 U.S. at 725–26, 89 S.Ct. at 2080–81 (footnote omitted). *See also Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (interpreting *Pearce* ).

Although *Pearce* refers to the imposition of a more severe punishment *after a new trial,* these constitutional limitations on the trial court's authority to increase a sentence would apply with equal force to any resentencing proceeding which takes place after judgment of sentence has been vacated. *See Commonwealth v. Hermankevich,* 220 Pa.Super. 197, 286 A.2d 644 (1971) (invalidating enhanced penalty imposed following vacation of illegal sentence).

again choose to impose a lengthy prison sentence. *Cf. Commonwealth v. Ruffo*, 360 Pa.Super. at 191, 520 A.2d at 49 (similar disposition).

## IV

This case already has been the subject of two appeals, and appellant's second issue is likely to arise on remand. We will therefore address appellant's remaining issue in the interest of judicial economy.

At the 1984 sentencing hearing, the trial court failed to state sufficient reasons for the disparity between Mr. Losch's sentence and the sentences imposed on his codefendants, Mr. Wolf and Mr. Jones. This court reversed and remanded. Appellant now contends that the trial court compounded its original error by again failing to sufficiently explain this disparity. This time we disagree.

At the June 20, 1986 hearing, the trial judge said:

[A]s to Mr. Jones and Mr. Wolf, as much as perhaps I personally regret it, perhaps then, certainly now, both of these fellows were the recipients of favorable plea agreements from the Commonwealth.

... It's true that the Court has the authority to abrogate or throw out a plea agreement when the Commonwealth and the Defense arrive at such a plea agreement. The Court has been tempted on a few occasions to do that. This judge was at one time a district attorney, but prior to that he was a defense attorney with considerable experience in hundreds of cases both by way of defense and prosecution, and I know that when defense counsel and district attorneys approach the Court with a plea agreement they do not do that by the seat of their pants. There is good, sound, substantial reason why a Court should be very hesitant to overrule the sound judgment of two experienced practitioners. While the Court has the power to second guess a plea agreement, the Court will rarely exercise that power because the Court cannot

have the facts and circumstances and information known to counsel.

N.T. at 21, 24.

In order to impose unequal sentences on codefendants, the court must articulate differences between the codefendants that justify the disparity in treatment. *Commonwealth v. Sinwell*, 311 Pa.Super. 419, 457 A.2d 957 (1983). See n. 8, *supra.* We find that the trial judge adequately discharged this duty. As the trial court noted, one key factor set Wolf and Jones apart from appellant Losch: Wolf and Jones were parties to a plea bargain. A codefendant who has successfully negotiated a plea bargain and a fellow codefendant who is not covered by a plea agreement are not similarly situated for sentencing purposes.

The presence or absence of a plea bargain is among the most important of all sentencing considerations. The trial court need not accept a plea agreement—*see* Pa.R.Crim.P. 319(b), but such agreements are encouraged because they serve the interests of the criminal justice system as a whole. *See Commonwealth ex rel. Kerekes v. Maroney*, 423 Pa. 337, 223 A.2d 699 (1966); *Commonwealth v. McKee*, 226 Pa.Super. 196, 313 A.2d 287 (1973). The practical benefits of plea bargaining have been summarized as follows:

> The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings.

*Commonwealth v. West*, 250 Pa.Super. 557, 563, 378 A.2d 1289, 1292 (plurality opinion) (citing *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977)). For many years, plea bargaining has been the method by

which the majority of criminal cases are resolved. *See Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). In light of the significant role that plea bargaining plays in the administration of justice, it is reasonable for a trial judge to base a disparity in sentencing on the fact that a codefendant participated in a court approved plea arrangement.

Appellant maintains that the trial court must first independently "justify the existence of the plea agreements in the codefendants' cases, and the absence of one in the Defendant's case." (Appellant's Brief at 11). The difficulty with this argument is that the initial decision whether to enter into plea discussions is subject to the discretion of the district attorney. *Commonwealth v. Howard*, 358 Pa.Super. 259, 264–65, 517 A.2d 192, 194 n. 2 (1986). Appellant has no right to a deal with the Commonwealth; the district attorney is ordinarily free to choose with whom he will negotiate. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364–365, 98 S.Ct. 663, 668–669, 54 L.Ed.2d 604 (1978); *Commonwealth v. Stafford*, 272 Pa.Super. 505, 509–510, 416 A.2d 570, 573 (1979) (Watkins, J., with two judges concurring in result). Appellant has not presented evidence that the prosecution practiced any form of invidious discrimination in this case.[11] Moreover, the record clearly shows that appellant's decision to plead guilty without the benefit of a plea bargain was knowing and voluntary. Under these circumstances, we find that the trial judge had no duty to inquire further into the reasons why the prosecution did not treat all three codefendants equally. Therefore, the court may choose to sentence appellant more severely than his codefendants on remand.

The judgment of sentence is vacated and the case is remanded for resentencing consistent with this opinion. Jurisdiction is relinquished.

11. We note that appellant testified at his 1984 sentencing hearing that he was not offered a plea bargain because he would have been subject to impeachment on this basis when he testified as a Commonwealth witness.