J-A02023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES FRANKLIN RODGERS | : | |
| | : | |
| Appellant | : | No. 389 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 17, 2020
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000590-1988,
CP-07-MD-0000689-2016

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: AUGUST 30, 2021**

Appellant, James Franklin Rodgers, appeals from the judgment of sentence of forty years to life imprisonment imposed after his prior juvenile mandatory life without parole sentence (LWOP) was vacated.  Appellant claims that the resentencing court imposed a *de facto* LWOP, erred by usurping the statutory authority of the Board of Probation and Parole (Parole Board), and improperly precluded evidence of the Commonwealth's pre-trial plea offer. We affirm.

The parties are familiar with the facts underlying of this appeal, and we briefly summarize the procedural history.  On May 23, 1990, a jury found

Appellant guilty of first-degree murder, robbery, and aggravated assault[1] in a capital case. The following day, the jury thereafter returned a sentencing verdict of life imprisonment. On April 3, 1991, the trial court imposed a mandatory LWOP sentence for first-degree murder.[2]

Following an unsuccessful direct appeal and a first post-conviction proceeding, Appellant filed a second Post Conviction Relief Act[3] (PCRA) petition challenging his mandatory LWOP sentence in light of **Miller v. Alabama**, 567 U.S. 460 (2012).[4] The clerk of the court generated a second miscellaneous (MD) docket number to supplement the original criminal (CR) docket number concerning this case, apparently for administrative reasons. Thereafter, the parties and the court appeared to have filed single copies of all subsequent paperwork under captions bearing both the MD and CR docket numbers, which were listed at the MD docket number.

---

[1] 18 Pa.C.S. §§ 2502(a), 3701, and 2702, respectively. Appellant's convictions are for the 1988 murder of Pasquale J. Lascoli, who was seventy-two years old at the time. The decedent was found in his home having suffered over seventy stab wounds. Appellant was approximately seventeen-and-a-half years old at the time of the offenses.

[2] The trial court also sentenced Appellant to a total concurrent term of five to ten years' imprisonment for the remaining offenses.

[3] 42 Pa.C.S. §§ 9541-9546.

[4] Appellant states that he has filed for *habeas* relief in federal court, and he also has a petition for DNA testing pending. We add that Appellant's brief contains matters challenging the integrity of his convictions. However, this appeal concerns only resentencing issues.

- 2 -

The PCRA court granted relief on Appellant's sentencing claim and held resentencing hearings from June 26 to June 29, 2019. On January 17, 2020, the resentencing court sentenced Appellant to serve forty years to life imprisonment for first-degree murder and read into the record its reasons for the sentence. N.T., 1/17/20, at 5-21.

Appellant timely filed a post-sentence motion, which the resentencing court denied by the order entered on February 13, 2020. The resentencing court's order denying Appellant's post-sentence motion stated, in part, that Appellant "may file **an** appeal . . . no later than thirty (30) days" from the date of the order. Order, 2/13/20 (emphasis added).

Appellant timely filed a single notice of appeal under a caption listing both the MD and CR docket numbers. Appellant complied with the resentencing court's order for a Pa.R.A.P. 1925(b) statement, but the resentencing judge retired before filing a Rule 1925(a) opinion.

On May 4, 2020, this Court issued a rule to show cause why the appeal should not be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (requiring the filing of separate notices of appeal in each case when a single order resolve issues arising on more than one docket). Appellant responded and summarized the administrative issues leading to the creation of the MD docket number. This Court discharged the rule to show cause but noted that this panel could revisit the issue of compliance with **Walker**.

Before addressing the merits of this appeal, Appellant contends that *Walker* does not bar consideration of this appeal. Appellant's Brief at 54-60. Although this case now carries two docket numbers—the original CR docket number and the new MD docket number—the underlying matter is a single criminal case against a single offender. Under these circumstances, we conclude that that the filing of a single notice captioned with the CR and MD docket numbers is proper. *See Walker*, 185 A.3d at 977; *see also Always Busy Consulting, LLC v. Babford & Co.*, 247 A.3d 1033, 1043 (Pa. 2021) (discussing consolidated cases); *Commonwealth v. Johnson*, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*) (overruling *Commonwealth v. Creese*, 216 A.3d 1142 (Pa. Super. 2019)). In any event, the resentencing court also advised Appellant that he need only file **an** appeal, which constitutes a breakdown in the operation of the court that would preclude a strict application of *Walker*. *See* Order, 2/13/20, at 2; *Commonwealth v. Larkin*, 235 A.3d 350, 354 (Pa. Super. 2020) (*en banc*), *appeal denied*, 251 A.3d 773 (Pa. 2021); *Commonwealth v. Stansbury*, 219 A.3d 157 (Pa. Super. 2019). Accordingly, we do not quash the appeal.

Appellant presents the following challenges to the resentencing court's sentence:

> 1. Is a 40-to-life sentence *a de facto* life sentence when virtually every other jurisdiction has allowed for parole consideration at 20, 25, or 30 years and the Pennsylvania legislature drew a line at 35 years?

2. When a [re]sentencing court says a defendant cannot safely be released now, but then allows for the possibility of release at a point after the suggested minimum sentence, does that sentence usurp the authority given by the legislature to the Parole Board?

3. When the Commonwealth makes the nature of the crime and the impact on the community central to its sentencing recommendation and when it puts the original prosecutor on the stand to explain how he believed this was one of the worst crimes he had ever seen, does the court abuse its discretion when it does not permit the defendant to ask that prosecutor if he offered a deal to the defendant, which would certainly change the perception of the seriousness of the crime? . . .

Appellant's Brief at 5 (formatting altered).[5]

Appellant first raises a constitutional challenge asserting that the resentencing court imposed a *de facto* LWOP sentence. In support, Appellant argues that there is a growing national consensus and an evolving standard of decency that a juvenile offender should be parole eligible after serving twenty to thirty years of imprisonment. ***Id.*** at 35-36. Appellant cites numerous statutes and decisions from other states, as well as 1 Pa.C.S. § 1102.1, the latter of which sets a thirty-five year minimum term of imprisonment for juveniles who commit murders when they are fifteen-years of age or older.[6] ***Id.*** Discussing ***Miller***, ***Montgomery v. Louisiana***, 577

_____

[5] We have omitted Appellant's fourth question presented, which concerned the ***Walker*** issue resolved above. ***See*** Appellant's Brief at 5.

[6] Section 1102.1(a) states, in part:

A person who has been convicted after June 24, 2012, of a murder of the first degree . . . and who was under the age of 18 at the

*(Footnote Continued Next Page)*

U.S. 190 (2016), and *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017), Appellant asserts that our courts should establish the standard that to withhold parole eligibility after twenty or thirty years' imprisonment violates the Pennsylvania Constitution. *Id.* at 38. Alternatively, Appellant requests that this Court find that any departure above the thirty-five year minimum sentence in Section 1102.1 constitutes an unconstitutional sentence unless there is a finding that the offender is irreparably corrupt.[7] *Id.* at 34, 39.

_____

> time of the commission of the offense shall be sentenced as follows:
>
> > (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S. § 1102.1(a)(1). Section 1102.1 does not apply to a juvenile offender convicted before *Miller*, but a resentencing court should consult Section 1102.1 for guidance. *See Commonwealth v. White*, 193 A.3d 977, 984 (Pa. Super. 2018).

[7] During this appeal, the United States Supreme Court decided *Jones v. Mississippi*, 141 S. Ct. 1307 (2021), and abrogated *Batts*'s holding that the imposition of a **discretionary** LWOP sentence required a sentencing court to find the permanent incorrigibility of a juvenile offender under *Miller* and *Montgomery*. *Jones v. Mississippi*, 141 S. Ct. 1307, 1311, 1318-19 (2021).

The *Jones* Court's reading of *Miller* and *Montgomery* focused on the **mandatory** imposition of LWOP sentences upon a juvenile offender. *Jones*, 141 S. Ct. at 1317-18. The *Jones* Court held that *Miller* and *Montgomery* required that a sentencing court consider age-related factors before imposing an LWOP sentence but did not mandate that the sentencing court make a finding of fact concerning a child's incorrigibility. *Id.* at 1318-19.

*(Footnote Continued Next Page)*

Appellant notes that other cases have raised similar arguments that are pending before the Pennsylvania Supreme Court. *Id.* at 37 (discussing *Commonwealth v. Felder*, 187 A.3d 809 (Pa. filed June 29, 2018), *granting appeal from*, 660 EDA 2015, 2017 WL 6505643 (Pa. Super. filed Dec. 20, 2017) (unpublished mem.)). Appellant claims that in *Felder*, the Commonwealth conceded that a forty-year minimum sentence constitutes a *de facto* LWOP sentence. *Id.*

The Commonwealth responds that the resentencing court did not abuse its discretion when imposing a forty-year minimum sentence. Commonwealth's Brief at 6-23. The Commonwealth recognizes that cases challenging *de facto* LWOP sentences are pending before our Supreme Court but notes that this Court has consistently held that sentences similar to Appellant's sentence were not *de facto* LWOP sentences. *Id.* at 28-31. The Commonwealth maintains that Appellant misread the argument presented to our Supreme Court and insists it did not concede a forty-year minimum sentence constitutes a *de facto* LWOP sentence case. *Id.* at 30.

This Court recently summarized the principles governing our review in *Commonwealth v. McGrath*, --- A.3d ---, ---, 2021 PA Super 132, 2021 WL 2641915 (Pa. Super. filed June 28, 2021).

---

The *Jones* Court, however, acknowledged that states may impose "additional sentencing limits in cases involving defendants under [eighteen] convicted of murder." *Id.* at 1323. Further, the Court noted that the case before it did not properly present an "as-applied Eighth Amendment claim of disproportionality regarding [the LWOP] sentence." *Id.* at 1322.

We have previously determined that a claim that the trial court imposed an impermissible *de facto* life sentence in violation of **Miller** constitutes a challenge to the legality of sentence. This Court has stated:

> A claim challenging a sentencing court's legal authority to impose a particular sentence presents a question regarding the legality of the sentence. The determination as to whether a trial court imposed an illegal sentence is a question of law; an appellate court's standard of review in cases dealing with questions of law is *de novo* and our scope of review is plenary.

> A trial court may not impose a term-of-years sentence on a juvenile convicted of homicide that equates to a *de facto* [LWOP] sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation.

**McGrath**, 2021 WL 2641915, at *3 (citations omitted and formatting altered).

This Court has distinguished a permissible sentence from an unconstitutional *de facto* LWOP sentence as follows:

> The key factor in considering the upper limit of what constitutes a constitutional sentence, in this narrow context, appears to be whether there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Implicit in this standard is the notion it would not be meaningful to provide an opportunity for release based solely on the most tenuous possibility of a defendant's surviving the minimum sentence imposed. To be meaningful or, at least, **potentially** meaningful, it must at least be **plausible** that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits.

**Commonwealth v. Bebout**, 186 A.3d 462, 468 (Pa. Super. 2018) (citation and footnote omitted) (emphasis in original).

This Court has consistently applied the "meaningful opportunity" standard to hold that similar sentences to the forty-year minimum sentence

in the present case are not *de facto* LWOP sentences. This Court has done so most recently in **McGrath** and **Commonwealth v. Summers**, 245 A.3d 686 (Pa. Super. 2021). **See, e.g.**, **McGrath**, 2021 WL 2641915, at *5 (discussing forty-eight-year minimum sentence); **Summers**, 245 A.3d at 698 (discussing forty-year minimum sentence); **Bebout**, 186 A.3d at 468 (discussing forty-five-year minimum sentence).

We acknowledge Appellant's references to a developing national consensus and standards of decency to assert that the Pennsylvania Constitution's protection against cruel and unusual punishment should bar any minimum sentence over thirty-five years as a *de facto* LWOP sentence.[8] We also note those claims mirror those currently under consideration before our Supreme Court. **See** Appellant's Brief at 37; **Felder**, 187 A.3d 809. However,

_____

[8] We note that Appellant's summary of statutes and case law from other states largely relies on parenthetical summaries of the term of years sentences permissible in those states. However, Appellant does not address how those states' laws may inform a claim with respect to Pennsylvania's indeterminate sentencing scheme. Further, in asserting a violation of the Pennsylvania Constitution, Appellant does not conduct a full analysis of whether the Pennsylvania Constitution provides greater protections than the United States Constitution. **See Commonwealth v. Baker**, 78 A.3d 1044, 1054 (Pa. 2013) (Castille, C.J., concurring) (noting that the text of the Pennsylvania Constitution prohibits "cruel punishments" while the United States Constitution prohibits "cruel and unusual punishments," and that the United States Constitution provides a "minimum floor" (citations omitted)); **Commonwealth v. Olds**, 192 A.3d 1188, 1190 n.3 (Pa. Super. 2018) (noting that the Pennsylvania and federal constitutional protection against cruel and unusual punishments are coextensive). As noted above, in **Jones**, the United States Supreme Court rejected **Batts**'s holding that **Miller** and **Montgomery** required a resentencing court to find a juvenile offender's permanent incorrigibility. **Jones**, 141 S. Ct. at 1313.

this panel is bound to follow precedent until that decisional law is overruled. *See Summers*, 245 A.3d at 700 (noting that "[i]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court" (citation omitted)). Therefore, because current precedent does not support Appellant's *de facto* life sentence claim, no relief is due.

Appellant next asserts that the trial court usurped the Parole Board's authority to determine when he demonstrated sufficient rehabilitation for release on parole. Appellant's Brief at 40. According to Appellant, the trial court's discussion of whether Appellant could be rehabilitated and safely released is a decision for the Parole Board. *Id.* at 40-41. Appellant again refers to Section 1102.1 concerning the thirty-five year minimum sentence to assert that the Parole Board should decide whether Appellant could be safely released after serving the minimum sentence. *Id.* at 45-46. Appellant concludes that he is entitled to a thirty-five year minimum sentence or a remand for a new sentencing hearing. *Id.* at 46.

The Commonwealth argues that Appellant's claim "is simply not true . . ." Commonwealth's Brief at 31. The Commonwealth continues that "[t]here is absolutely no legal/statutory authority to require a sentencing court to bow to the [P]arole [B]oard." *Id.* at 32. According to the Commonwealth, the resentencing court properly determined that Appellant's "ability to function as a law abiding citizen in society will not occur until he serves an additional term

of imprisonment." ***Id.*** Parole, the Commonwealth notes, will be a discretionary decision by the Parole Board after Appellant's completion of his minimum sentence. ***Id.***

Under Title 61, the Parole Board "may release on parole any inmate . . . only after[] the expiration of the minimum term of imprisonment fixed by the court in its sentence." 61 Pa.C.S. § 6137(a)(1), (3) (subsequently amended eff. June 30, 2021, to change the term "inmate" to "offender" and include references to parole guidelines and "short sentences"). To the extent Section 1102.1 applies and requires a thirty-five year minimum sentence for a juvenile offender after ***Miller***, this Court has held that Section 1102.1 constitutes a mandatory minimum sentence. ***See generally Commonwealth v. Lawrence***, 99 A.3d 116, 119 (Pa. Super. 2014). Therefore, if Section 1102.1 applies, the resentencing court retains the discretion to depart upwards from that mandatory minimum within the constitutional range of providing a meaningful opportunity for release. ***See*** 18 Pa.C.S. § 1102.1(e) (stating that "[n]othing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section").

Here, because Appellant committed the offense and was convicted before ***Miller***, Section 1102.1 was not mandatory and the resentencing court was not bound to sentence Appellant to a thirty-five year minimum sentence. ***See*** 18 Pa.C.S. § 1102.1; ***White***, 193 A.3d at 984. Just as the resentencing court could have deviated below the guidance provided by Section 1102.1, it

retained the discretion to sentence above the thirty-five year minimum sentence. *See McGrath*, 2021 WL 2641915, at *5 (discussing crimes committed before the decision in *Miller*); *Summers*, 245 A.3d at 698 (same); *Bebout*, 186 A.3d at 468 (same). The Parole Board, in turn, lacks the statutory authority to release an offender before the expiration of the minimum sentence set by the court. *See* 61 Pa.C.S. § 6137(a)(3).

Based on the foregoing, Appellant's claim fails. The Parole Board's authority under Section 6137 did not preclude the resentencing court from imposing a minimum sentence beyond the thirty-five-year mandatory minimum. Further, to the extent Appellant contends that it was improper for the resentencing court to consider Appellant's rehabilitative potential based on the time spent in prison after his conviction, but before resentencing, his claim lacks merit. *See Commonwealth v. Losch*, 535 A.2d 115, 122 (Pa. Super. 1987). Accordingly, no relief is due.

In his final issue, Appellant asserts that the resentencing court erred by precluding cross-examination concerning the Commonwealth's offer of a plea agreement for a sentence of ten-to-twenty years' imprisonment before his jury-trial conviction. By way of background, at the resentencing hearing, the Commonwealth called the original prosecutor, who testified, in part, that he tried the instant case as a capital death penalty case because it was one of the worst he had seen. On cross examination, Appellant asked whether the original prosecutor offered Appellant a plea agreement. The Commonwealth objected, and the resentencing court sustained the objection.

- 12 -

On appeal, Appellant argues that the original prosecutor's testimony was relevant to the nature of the crime and that the opinion evidence "likely carried great weight with the court." Appellant's Brief at 49-50. Appellant claims that the resentencing court's failure to consider evidence of the plea agreement as mitigating or impeachment evidence upon the nature of the offense constitutes reversible error that resulted in an excessive sentence. *Id.* at 51-53.

The Commonwealth responds that plea negotiations "have absolutely no bearing on the sentence imposed following a conviction by a jury." Commonwealth's Brief at 33. The Commonwealth continues, "Just as the Rules of Evidence prohibit admission of statements made by the defendant in the course of plea negotiations, the Commonwealth should not expect plea discussions it engaged in to be weaponized in the course of a sentencing proceeding following a jury's conviction at trial. *See* Pa.R.E. 410(a)." *Id.* at 33. According to the Commonwealth, "A court is never required to consider plea negotiations when sentencing a convicted felon." *Id.*

"The admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court may only reverse rulings on admissibility upon a showing that the lower court abused its discretion. As with any evidentiary ruling, the trial court should balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice." *Commonwealth v. Billa*, 555 A.2d 835, 840 (Pa. 1989) (citations omitted). However, "a proceeding held to determine sentence is

not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials[, and] the court may receive any relevant information for the purposes of determining the proper penalty." ***Commonwealth v. Medley***, 725 A.2d 1225, 1229 (Pa. Super. 1999) (citations omitted).

Here, our review of the record for the resentencing hearing belies Appellant's claim that the court abused its discretion or committed reversible error in excluding evidence of the plea agreement. Specifically, aside from the challenged opinion testimony from the original prosecutor, there was overwhelming evidence of the nature and severity of the offense and the impact of the crimes on the victim's family and community. Further, a review of the record concerning the resentencing court's explanation for the imposed sentence does not reveal any reference to the original prosecutor's belief that this case was one of the worst he had seen, but instead properly references the trial record, as well as testimony from the decedent's family. ***See*** N.T., 1/17/20, at 5-6 (indicating the resentencing court's awareness that the decedent suffered seventy-eight knife wounds and of discussions of testimony from family members about the impact on the family, extended family, and community). Accordingly, we conclude that Appellant has failed to demonstrate reversible abuse of discretion in the resentencing court's ruling to preclude evidence of the Commonwealth's plea offer to Appellant.

For these reasons we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/30/2021